COURT OF APPEALS
DECISION
DATED AND FILED

June 30, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP1516-CR**

Cir. Ct. No. **2021CF3563**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT I

---

STATE OF WISCONSIN,

  PLAINTIFF-RESPONDENT,

 V.

DOMINIC L. BRISTER,

  DEFENDANT-APPELLANT.

---

  APPEAL from a judgment and an order of the circuit court for Milwaukee County: MICHELLE A. HAVAS, Judge. *Reversed and cause remanded with directions*.

  Before Donald, C.J., Colón, P.J., and Geenen, J.

 ¶1 GEENEN, J. Dominic L. Brister appeals from a judgment of conviction and an order denying his motion for postconviction relief. He argues that the circuit court exceeded its authority when it ordered that he have no contact

with his then-four-year-old daughter, Diana,[1] for the duration of his eleven-year sentence. We conclude that the no-contact order is a content-neutral restriction on Brister's First Amendment rights that is subject to intermediate scrutiny. We further conclude that, on this record, the no-contact order is overly broad and fails to meet intermediate scrutiny. Accordingly, we reverse and remand the cause with directions to modify the no-contact order in a manner consistent with this opinion.

## BACKGROUND

¶2 On June 22, 2023, Brister was sentenced in two unrelated cases. In Milwaukee County Circuit Court Case No. 2020CF367, which is not part of this appeal, Brister was sentenced for possessing a firearm as a felon ("the 2020 case"). He illegally possessed a gun while also committing acts of domestic abuse against his live-in girlfriend, Marie. In Milwaukee County Circuit Court Case No. 2021CF3563, the case before us on appeal, Brister was sentenced for child neglect and OWI (1st) with a minor in the car, after Brister was pulled over for speeding and weaving on I-43 while Diana, then two years old, was unsecured in the backseat of the car. Diana was not injured, so the charge of child neglect alleged that harm would be a natural and probable consequence of the neglect. *See* WIS. STAT. § 948.21(3)(e) (2023-24).[2] During the traffic stop, police found a loaded gun under the rear passenger seat. Brister called Marie to pick Diana up from the traffic stop, in violation of a no-contact order that had been imposed while he was released on bail in the 2020 case.

---

[1] For ease of reading, we use pseudonyms to refer to crime victims throughout this opinion.

[2] All references to the Wisconsin Statutes are to the 2023-24 version.

¶3      The State recommended a global sentence of four years of confinement, followed by four years of extended supervision.  In its sentencing remarks, the State discussed Brister's criminal record, which included 2006 convictions for burglary and uttering a forgery, a 2009 conviction for marijuana possession, and three convictions for burglary in 2011.  Brister's counsel recommended a three-year term of confinement, stayed for three to four years of probation.  Counsel noted Brister's remorse and that he regretted the example he was setting for his four children.  In his allocution, Brister apologized to Diana and Marie, acknowledging that he had foolishly put his daughter's safety in jeopardy. He accepted responsibility and apologized to the court.

¶4      The circuit court's sentencing remarks focused on the gravity of the offenses, noting the danger to which Brister had exposed his daughter and the seriousness of twice having a gun while intoxicated.  The court summarized the most relevant sentencing factors when rejecting Brister's recommendation for probation:

> The first thing I have to consider is whether probation is appropriate.  I can't think of anything further from appropriate, than putting you on probation, for these offenses.  You have demonstrated, by your behavior, not only by your criminal record, not only by your incredibly dangerous behavior in not following court orders and having that firearm and being drunk while you have the firearm, and battering [Marie], engaging in disorderly conduct. Not only that, but then adding on, that you needed to neglect and endanger your two-year-old while you were driving with her, again drunk, at incredibly high speeds, and having the firearm accessible to her.  It defies description.

The court sentenced Brister to six months in jail for the OWI, concurrent to 18 months of confinement and 18 months of extended supervision for child neglect. Those sentences were made consecutive to four years' confinement and four

years' extended supervision for the 2020 case. Thus, the total sentence for both cases was eleven years' imprisonment, equally divided between confinement and extended supervision.

¶5     After stating the sentences, the court ordered that Brister have no contact with Marie or Diana for the entire eleven-year sentence, stating: "I'm going to find, as conditions of the time that you are on—either serving your sentence, initial confinement, or extended supervision—I'm going to order that there be a no contact order with [Marie] and [Diana]."

¶6     Brister filed a postconviction motion in the OWI/child neglect case, asking the court to modify or remove the no-contact order with respect to Diana and to modify the no-contact order with respect to Marie. As to Diana, Brister requested that the court remove the no-contact order or modify it to prohibit only unsupervised contact "so that he is not stripped of his ability to establish a relationship with his daughter." Brister feared that if he were prohibited from having any contact whatsoever with Diana for the entire duration of his eleven-year sentence, he risked "having his parental rights terminated as a result of his inability to contact [Diana] for such a lengthy term." With respect to Marie, Brister asked the court to modify the no-contact order "to permit contact with the permission of [Marie] and his Department of Corrections agent."

¶7     The court denied the motion for the same reasons it gave at sentencing before concluding:

> While the court understands the defendant's desire to have contact with [Marie] and [Diana], the court believed its no-contact orders were necessary and appropriate to further its sentencing objectives, due to the nature of the defendant's actions as well as his criminal record. As such, after consideration of the motion, the

4

court declines to modify its orders for no contact with [Marie] and [Diana].

¶8    Brister appeals, challenging only the no-contact order with respect to Diana. The 2020 case and no-contact order with respect to Marie are not part of this appeal.

## DISCUSSION

### I.    The no-contact condition in this case is a content-neutral restriction on Brister's First Amendment rights to which intermediate scrutiny applies.

¶9    As a threshold matter, the parties dispute what level of scrutiny applies to our review of the sentencing condition imposing no contact between Brister and Diana for the duration of his eleven-year sentence.[3] The State argues, and Brister acknowledges, that Wisconsin courts have historically held that sentencing conditions implicating fundamental constitutional rights are reviewed only for overbreadth and whether the condition is reasonably related to the defendant's rehabilitation. However, Brister asserts that these holdings are not uniform across all constitutional rights, with some sentencing conditions being subject to intermediate scrutiny. Brister argues that the sentencing condition at issue here limits his constitutional right to a parent-child relationship with Diana, and because this right is at least as important as the rights subject to intermediate

---

[3] The State argues that Brister forfeited the argument that the no-contact condition in this case is unconstitutionally broad, and thus, we need not reach the merits of that argument or determine the standard of review applicable to it. We disagree. Before the circuit court, Brister identified the constitutional right involved (i.e., his right to a parent-child relationship with Diana) and argued that the court should remove the no-contact condition or narrow it such that it did not effectively terminate his parental rights. Conceding that the circuit court had statutory authority to issue the no-contact condition is not a concession about the condition's constitutionality, and while Brister's legal analysis on this issue is considerably more detailed and refined on appeal, he did not fail to raise the issue before the circuit court.

5

scrutiny in other cases, the no-contact sentencing condition in this case should also be subject to heightened scrutiny.

¶10 We conclude that Brister is correct that heightened scrutiny applies (in particular, intermediate scrutiny), but we reach that conclusion for a different reason. We need not engage in an analysis that ranks some fundamental constitutional rights above others in terms of perceived importance. All fundamental constitutional rights are important. Rather, we agree with Brister that intermediate scrutiny applies because binding case law makes clear that content-neutral sentencing conditions burdening a defendant's First Amendment rights are subject to intermediate scrutiny, and therefore, must be "narrowly tailored to serve a significant governmental interest." *State v. King*, 2020 WI App 66, ¶23, 394 Wis. 2d 431, 950 N.W.2d 891 (citation omitted). The no-contact order in this case is such a condition.

¶11 We first discuss the general principles governing review of sentencing conditions that impinge upon a defendant's constitutional rights. We then discuss how content-neutral conditions limiting a defendant's First Amendment rights fit into that general framework. In so doing, we explain how Brister's constitutional right to a parent-child relationship with Diana is inextricably tied to his First Amendment rights, rendering the no-contact sentencing condition in this case a content-neutral restriction on Brister's First Amendment rights to which intermediate scrutiny applies.

## A. General principles governing review of sentencing conditions.

¶12 Courts have broad authority under WIS. STAT. § 973.01(5) to impose any conditions on extended supervision[4] that are "reasonable and appropriate," *State v. Galvan*, 2007 WI App 173, ¶8, 304 Wis. 2d 466, 736 N.W.2d 890, and we "will not usually interfere with a [circuit] court's discretion in this area," *State v. Ogden*, 199 Wis. 2d 566, 571, 544 N.W.2d 574 (1996). We "will start with the presumption that the [circuit] court acted reasonably, and the defendant must show some unreasonable or unjustifiable basis in the record for the sentence complained of." *Elias v. State*, 93 Wis. 2d 278, 282, 286 N.W.2d 559 (1980).

¶13 When evaluating constitutional challenges to sentencing conditions, reviewing courts often observe that defendants who are convicted and serving their sentences "do not enjoy the same degree of liberty as those individuals who have not been convicted of a crime." *State v. Stewart*, 2006 WI App 67, ¶12, 291 Wis. 2d 480, 713 N.W.2d 165. Consequently, courts typically do not evaluate constitutional challenges to sentencing conditions under the same rubric and level of scrutiny as they would for individuals who are not convicted and serving out a

---

[4] Ordinarily, circuit courts do not have the authority to set conditions during the initial confinement period. *State v. Gibbons*, 71 Wis. 2d 94, 99, 237 N.W.2d 33 (1976). WISCONSIN STAT. § 973.049(2) provides an exception for prohibitions on contact with victims and witnesses. This court is unaware of any published cases analyzing the constitutionality of a § 973.049(2) no-contact order during the initial confinement portion of a sentence.

The parties agree, as do we, that principles governing the constitutionality of extended supervision conditions should apply given that the no-contact conditions were imposed as part of Brister's sentence and extended through the extended supervision period. Moreover, just like a person on extended supervision, a person convicted of a crime and serving initial confinement "do[es] not enjoy the same degree of liberty as those individuals who have not been convicted of a crime," *State v. Stewart*, 2006 WI App 67, ¶12, 291 Wis. 2d 480, 713 N.W.2d 165, but their constitutional rights have also not been extinguished by the conviction.

sentence. *See State v. Oakley*, 2001 WI 103, ¶19, 245 Wis. 2d 447, 629 N.W.2d 200.

¶14 Instead, sentencing conditions that limit a defendant's constitutional rights are reviewed for reasonableness, and we uphold them "'as long as they are not overly broad and are reasonably related to the person's rehabilitation.'" *Id.* (quoting *Edwards v. State*, 74 Wis. 2d 79, 84-85, 246 N.W.2d 109 (1976)). A condition is not overly broad if it can rationally be inferred that the prohibited conduct might lead to future crime. *Edwards*, 74 Wis. 2d at 85. A condition is reasonably related to the defendant's rehabilitation if the condition assists the defendant in conforming their conduct to the law. *King*, 394 Wis. 2d 431, ¶22.

### B. Sentencing conditions limiting a defendant's First Amendment rights, and the circuit court's no-contact sentencing condition.

¶15 While all of the general principles described above apply to challenges to sentencing conditions limiting a defendant's constitutional rights, binding case law recognizes that some categories of conditions are subject to heightened scrutiny. In particular, we focus on *State v. King* and sentencing conditions restricting a defendant's First Amendment rights.

¶16 In *State v. King*, we applied intermediate scrutiny to sentencing conditions that imposed limitations on the defendant's access to the internet. In that case, King was convicted of using a computer to facilitate a child sex crime and child enticement. *Id.*, 394 Wis. 2d 431, ¶¶6-7. Part of King's sentence included probation, but probation came with a court-imposed restriction on his access to the internet. *Id.*, ¶¶7, 11-15. To summarize, the internet restrictions allowed King to access the internet and possess internet-capable devices, but in order to do either, King was required to have the prior approval of his Department

of Corrections agent. *Id.*, ¶¶15, 31. King challenged these internet restrictions on appeal, arguing that they violated his First Amendment rights. *Id.*, ¶18.

¶17 We began our discussion in *King* by stating the same general governing principles that are set forth above in the previous section of this opinion—that we generally review sentencing conditions "'under the erroneous exercise of discretion standard to determine their validity and reasonableness measured by how well they serve their objectives: rehabilitation and protection of the state and community interest.'" *Id.*, ¶25 (quoting *Stewart*, 291 Wis. 2d 480, ¶11). However, the nature of the sentencing condition in *King* required further explanation regarding the applicable standard of review. Namely, because the challenged internet conditions were "content neutral" restrictions on King's First Amendment rights, we concluded that "intermediate scrutiny" applied to our review. *Id.*, 394 Wis. 2d 431, ¶23. Citing several opinions of the United States Supreme Court, we explained that "[t]he intermediate scrutiny test allows the government to impose reasonable, content-neutral restrictions on speech that are 'narrowly tailored to serve a significant governmental interest.'" *Id.* (citation omitted). We stated that whether a condition of supervision satisfies this standard is a question of law that we review de novo. *Id.*, ¶25.

¶18 In this case, no party suggests that *King* applied the wrong standard or that the application of intermediate scrutiny to content-neutral sentencing conditions limiting a defendant's First Amendment rights is somehow incompatible with the general principles governing review of sentencing conditions as outlined above. Indeed, we view *King*'s application of intermediate scrutiny as perfectly compatible with those general principles. In particular, sentencing conditions are generally reviewed for overbreadth, and we read *King* as setting the standard for what constitutes an overly broad sentencing condition

9

when the condition constitutes a content-neutral limitation on a defendant's First Amendment rights.[5] Put another way, if a sentencing condition constitutes a content-neutral limitation on the defendant's First Amendment rights, it is unconstitutionally broad and unreasonable if it does not meet intermediate scrutiny.

¶19 Having concluded that **King** stands for the proposition that content-neutral sentencing conditions limiting a defendant's First Amendment rights are subject to intermediate scrutiny, we must determine whether the no-contact order in this case constitutes such a condition. Applicable case law compels the conclusion that the no-contact order in this case is a content-neutral restriction on Brister's First Amendment rights, and therefore, it must meet intermediate scrutiny.

¶20 The United States Supreme Court has repeatedly and emphatically recognized that a parent's right to direct the upbringing of their children is inextricably tied to the parents' First Amendment rights, commonly in the context of protecting a parent's right to direct the religious upbringing of their children. *See, e.g.*, **Mahmoud v. Taylor**, 606 U.S. 522, 546 (2025); **Espinoza v. Montana Dep't of Revenue**, 591 U.S. 464, 486 (2020). While these more recent cases focus on the parent's right to direct the child's religious upbringing, the Supreme Court

---

[5] In further support of this point, we implied in **State v. King** that a content-*based* sentencing condition limiting a defendant's First Amendment rights would have to satisfy strict scrutiny in order to avoid being unconstitutionally broad. That is, our decision in **King** clearly contemplated the application of intermediate or strict scrutiny to certain categories of sentencing conditions, and we did not view application of these heightened standards as contradicting the general principle that sentencing conditions are reviewed only for overbreadth and reasonableness in relation to the defendant's rehabilitation. **State v. King**, 2020 WI App 66, ¶23 n.6, 394 Wis. 2d 431, 950 N.W.2d 891.

has explicitly recognized that a parent has a more general "right to communicate with" their children that is protected by the First Amendment. *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 17 (2004), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014). Indeed, communication between a parent and child is so important that the prolonged failure to communicate with one's child without good cause can be grounds for involuntarily terminating a person's parental rights. *See* WIS. STAT. § 48.415(1). Biological parentage generally offers a person the opportunity to develop a relationship with their children and to direct their upbringing, and the First Amendment protects the right of parents to communicate with their children and develop that relationship. *See Elk Grove*, 542 U.S. at 17; *Hodgson v. Minnesota*, 497 U.S. 417, 445-46 (1990).

¶21 Given this background, we have no trouble concluding that the sentencing condition in this case prohibiting all communication and contact between Brister and Diana necessarily limits Brister's First Amendment rights to develop a relationship with Diana and direct her upbringing. Moreover, because the no-contact condition applies to *all* contact and communication regardless of content, the no-contact condition constitutes a content-neutral limitation on Brister's First Amendment rights.

¶22 The State directs our attention to the fact that, in *King*, we upheld the internet restrictions, relying in part on the general principle that convicted individuals serving out their sentences are not on the same footing as individuals who are not serving out their sentences. While it is true that we upheld the internet restrictions in *King*, we did so after concluding that the restrictions were "narrowly tailored" and satisfied intermediate scrutiny. *King*, 394 Wis. 2d 431, ¶67. Thus, the fact that we ultimately upheld the sentencing conditions at issue in

11

*King* does not contradict our conclusion in this case that the circuit court's no-contact sentencing condition is a content-neutral limitation on Brister's First Amendment rights subject to intermediate scrutiny.

¶23 The State further argues that if we adopt Brister's analysis, we "would essentially nullify great swaths of case law in which [we] and the Wisconsin Supreme Court have emphasized that circuit courts have broad discretion to fashion a defendant's sentence." We disagree. Our opinion is a straightforward application of a preexisting standard of review applicable only to content-neutral sentencing conditions limiting a defendant's First Amendment rights. Our opinion does not implicate sentencing conditions that do not fit within this narrow category. Having determined that Supreme Court precedent compels the conclusion that the no-contact order in this case constitutes such a condition because it prevents all communication between a parent and their child, *King* directs us to apply intermediate scrutiny. Accordingly, the no-contact condition must meet intermediate scrutiny, and if it does not, it is unconstitutionally broad.

## II. The condition of Brister's sentence imposing no contact between him and Diana for the duration of his eleven-year sentence does not meet intermediate scrutiny.

¶24 Brister argues that the condition of his sentence imposing no contact between him and Diana for the duration of his eleven-year sentence is overly broad because it effectively terminates his constitutional right to the parent-child relationship. He asserts that the condition fails to meet intermediate scrutiny because it is not narrowly tailored to the interest it is meant to achieve, and less restrictive alternatives exist that would achieve the circuit court's goals just as effectively. The State responds that the circuit court reasonably determined based

on the record that the no-contact order was necessary to protect Diana from future harm.

¶25    We begin with the language of the statute under which the circuit court issued the no-contact order. *State ex. rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110. WISCONSIN STAT. § 973.049(2) grants a circuit court authority to prohibit a defendant from contacting crime victims and witnesses as a condition of their sentence:

> When a court imposes a sentence on an individual or places an individual on probation for the conviction of a crime, the court may prohibit the individual from contacting victims of, witnesses to, or co-actors in, a crime considered at sentencing during any part of the individual's sentence or period of probation if the court determines that the prohibition would be in the interest of public protection. For purposes of the prohibition, the court may determine who are the victims of or witnesses to any crime considered at sentencing.

No-contact orders under this section can apply to both the term of confinement and extended supervision. *State v. Campbell*, 2011 WI App 18, ¶22, 331 Wis. 2d 91, 794 N.W.2d 276.

¶26    Having concluded that the no-contact order in this case constitutes a content-neutral restriction on Brister's First Amendment rights, *King* directs us to apply intermediate scrutiny to our review of the order. This means that the no-contact condition must be "narrowly tailored to serve a significant governmental interest." *King*, 394 Wis. 2d 431, ¶23 (citation omitted). "A condition need not be the least restrictive means of advancing the government's interests in order to satisfy the 'narrowly tailored' requirement of intermediate scrutiny." *Id.* (citation omitted). "Rather, the standard is met so long as the restriction 'promotes a

13

substantial government interest that would be achieved less effectively absent the regulation.'" ***Id.*** (citation omitted).

¶27 Brister argues that the condition that he have no contact with his daughter for the duration of his eleven-year sentence is overly broad and effectively terminates his right to a parent-child relationship with Diana. He observes that the condition sweeps across two unrelated cases, and the circuit court never explained how or why shutting off all lines of communication between him and his daughter serves the interests the court sought to achieve.

¶28 We agree with Brister. The scope and duration of the no-contact order renders it overly broad and unreasonable with respect to Diana. The circuit court imposed the no-contact order with Diana because Diana was a victim of two of the crimes for which Brister was convicted and sentenced—child neglect and OWI (1st) with a minor in the car. However, the actual sentence for those two crimes amounted to three years of the total eleven-year sentence. The other eight years were a result of the unrelated 2020 case involving Marie. That is, the circuit court imposed a no-contact order with respect to Diana that is almost quadruple the time of the sentence for the crime that justified the no-contact order in the first place.[6] The circuit court did not explain this disparity, and in our view, imposing

---

[6] We suspect that the circuit court failed to differentiate between the two no-contact orders because they were imposed and challenged together, despite the cases never being formally joined or consolidated. When the circuit court sentenced Brister, it imposed sentences for both the 2020 case and his crimes involving Diana, and it imposed a no-contact order with respect to both victims for the duration of his combined sentence. Brister then challenged both no-contact orders in his postconviction motion. On appeal, Brister does not challenge the no-contact order with respect to Marie and nobody contends that Diana was a victim in the domestic abuse incident that led to the conviction in the 2020 case which comprises eight years of Brister's eleven-year sentence. On remand, the circuit court will consider for the first time what no-contact conditions are necessary to protect Diana without simultaneously considering what no-contact conditions are necessary to protect Marie.

an eleven-year no-contact order between a father and his daughter is irrational (and certainly not narrowly tailored) where Brister did not cause harm to Diana and the sentence for the crime justifying the no-contact order is itself only three years.

¶29 We also view the scope of the no-contact order to be overly broad and not narrowly tailored. The circuit court correctly described Brister's criminal acts as "dangerous," but it failed to explain how no contact *whatsoever* between Brister and Diana for the entire eleven-year sentence actually protects Diana. Under the circuit court's no-contact order, Brister is not only prohibited from unsupervised face-to-face contact with Diana, he is prohibited from communicating with her in any way, including during the period of time that Brister is confined. He cannot call, text, email, or send letters to his daughter for eleven years. Protecting Diana, as a victim of Brister's crimes, is a significant and legitimate goal, but on this record, we see no rational connection between the scope and duration of the no-contact order and the circuit court's purported goal of protecting Diana.

¶30 Finally, we observe that the constitutional right abridged here, Brister's right to a parent-child relationship with Diana, is a finite right. It exists only so long as Diana is a legally recognized child. Put another way, Brister has no constitutionally protected right to a parent-child relationship with Diana after she reaches the age of majority. Diana was four years old when Brister was sentenced, meaning that Brister cannot have contact with her until she is 15 years old. The vast majority of Brister's finite right to a parent-child relationship is, in practical terms, terminated by the eleven-year no-contact order. While being incarcerated will, in all likelihood, negatively affect the parent-child relationship between Brister and Diana, in this case, the circuit court effectively terminated

Brister's right to a parent-child relationship with Diana without any of the legal protections attendant to formally and legally terminating parental rights.[7]

## CONCLUSION

¶31    We conclude that the no-contact order prohibiting all forms of contact and communication between Brister and his daughter for the duration of his eleven-year sentence is a content-neutral restriction on Brister's First Amendment rights that is subject to intermediate scrutiny.  We further conclude that, on this record, the no-contact order is overly broad and fails to meet intermediate scrutiny.  Accordingly, we reverse and remand the cause to the circuit court with directions to modify the no-contact order with regards to Diana in a manner consistent with this opinion.

*By the Court.*—Judgment and order reversed and cause remanded with directions.

Recommended for publication in the official reports.

---

[7] We note that this is an extreme case.  Not every no-contact order imposed under WIS. STAT. § 973.049(2) between a parent and child will effectively terminate the parent-child relationship like the one considered in this appeal.  We also observe that cases involving other crimes committed by a parent against their children may well justify a lengthy and absolute no-contact condition under § 973.049(2).  However, under the facts of this case, the no-contact order presented here is irrational, overly broad, and not narrowly tailored to serve the admittedly significant interest of protecting Diana.

16